IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMMIE D. HARMS, | ) CASE NO. 4:10-cv-3114 |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT AND** |
| | ) **REQUEST FOR JURY** |
| HEARTHSTONE HOMES, INC., | ) |
| Defendant. | ) |

COMES NOW the Plaintiff, Jammie D. Harms, by and through her attorney, Douglas J. Peterson, and for her cause of action against the Defendant, states and alleges as follows:

<u>JURISDICTION</u>

1. This action is brought as a sexual and religious discrimination claim pursuant to Title VII Equal Employment Opportunity, 42 U.S.C.A. § 2000e *et seq* (Title VII); a gender and religious discrimination claim under the Nebraska Fair Employment Practices Act, (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq;* the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(K); and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 1104.

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. 2000(e) as amended, and by 28 U.S.C. §§ 1331, 1332, and 1343(a)(4), which provide for the original jurisdiction in this Court for all civil actions arising under the Constitution, laws or treaties of the United States and any civil action authorized by law to recover damages or to secure the protection of civil rights.

The supplemental jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. § 1367(a) for jurisdiction over all other claims that are so related to claims in the action which provide original jurisdiction.

3. The unlawful employment practices alleged below were committed in the State of Nebraska. Venue is proper within this district pursuant to 28 U.S.C. § 1391(b).

## ADMINISTRATIVE PROCEDURES

4. The plaintiff was terminated from her employment with the defendant on June 3, 2009. She filed a timely charge of discrimination against the defendant with the Nebraska Equal Opportunity Commission, and the U.S. Equal Opportunity Commission, said filing occurring on August 14, 2009.

5. On or about June 4, 2010, the plaintiff received from the U.S. Equal Opportunity Commission a Notice of Right to Sue letter entitling the plaintiff the right to commence this action within 90 days of receipt of Notice. A copy of the Notice is attached hereto, marked as Exhibit A, and incorporated fully herein by reference.

6. The plaintiff has satisfied all private, administrative and judicial prerequisites for the institution of this action.

## PARTIES

7. Jammie D. Harms, Plaintiff, is a resident and citizen of Lincoln, Lancaster County, Nebraska. Plaintiff is an eligible employee as that term is defined within the meaning of Title VII and NFEPA.

8. Defendant, Hearthstone Homes, Inc., is a corporation with its principal headquarters located at 810 N. 96th Street, 3rd Floor, Omaha, Nebraska, with its registered agent, John J. Smith, located at the same address. Defendant qualifies as both an "employer" within the meaning Title VII and NFEPA, and as a "covered entity."

## STATEMENT OF CLAIMS AND ALLEGATIONS

9. Plaintiff was hired by the defendant in April 2008 and served as the Executive Assistant to John Smith, Chief Executive Officer of Defendant. She was paid a salary of $45,100 a year.

10. Throughout Plaintiff's employment, Smith and other managers actively attempted to create a spiritual, religious work environment based on concepts incorporating universal energy, concepts of reincarnation, and intuitive spiritualism. Smith stressed to employees that past lives can explain current behaviors and can be understood through positive and negative force fields understood through "muscle testing." This religious belief has been described as "Intuitive Spiritualism." The plaintiff was expected to understand and accept this religion as part of her role as an Executive Assistant to Smith, including being required to study materials related to this religion.

11. The plaintiff reasonably believed that Smith expected her to apply all principals of this Intuitive Spirituality including utilizing positive and negative energy force fields when making all decisions as his Executive Assistant. Plaintiff did not fully embrace this religion being exercised by Smith and other managers, but understood that if she did not follow along with the

3

intuitive concepts she would lose her employment. Therefore, she attempted to follow Smith's direction on applying Intuitive Spiritualism on all work related matters.

12.     In March of 2009, Plaintiff notified Smith, as her employer, that she was pregnant, that she intended to work up until the time of delivery, which was estimated to be mid-September, 2009, and that she plan to return after a short term medical leave. Smith responded by telling the plaintiff to be cautious because "babies can remember things while in the womb", and that Smith's mother had a sexual affair with another man while she was pregnant with him and that he could still remember the trauma.

13.     After the plaintiff made Smith aware of her pregnancy, through the remainder of March and into the months of April and May, Smith made several comments to the plaintiff, such as, "Are you hormonal today?", "You look like you've been rode hard and put away wet", and other general comments regarding her physical appearance in light of her pregnancy.

14.     On April 16, 2009, at 12:00 p.m., Plaintiff was called into a meeting led by Smith and attended by other managers Scott Kinkaid, Dave Vogtman, and Heidi Bedlan.  This meeting was held in the Board Room, and as his Executive Assistant, Plaintiff brought Smith his lunch.  Once she came into the Board Room she was asked to stay and Smith asked the two other gentlemen to repeat their earlier comments regarding their "intuition" as to the plaintiff's "disconnect" with her fetus.  These managers were discussing this topic before the plaintiff entered the Board Room.  It was explained to her that

4

Vogtman's intuitive sense saw her fetus as two magnets on opposite ends repelling one another, and Kinkaid described her pregnancy as a "miss". Smith explained that his intuitive sense was telling him that the headaches Plaintiff was experiencing were related to her pregnancy. This meeting was very upsetting to the plaintiff.

15.   On April 16, 2009 at approximately 3:05 p.m., Smith organized a conference call with Kimberly, a psychic from Sedona, Arizona, who specialized in intuitive spiritual interpretation.  Plaintiff was asked to be part of the conference call to get the psychic's perspective on the affects of the plaintiff's pregnancy.  Smith explained to the psychic that the plaintiff, since becoming pregnant, had cut her hair shorter, gained 15 to 20 pounds, and then asked the psychic whether or not she had "energy" about his assistant, and whether or not negative energy was being created with the pregnant plaintiff because she had a male boss versus a female boss.  This phone call was very upsetting to the plaintiff.

16.   On April 24, 2009 at approximately 3:00 p.m., Smith initiated a phone call with Dr. Sandy Earl, a chiropractor and a self-described energy worker, to discuss Smith's mother issues when he was a child and how the plaintiff's pregnancy was bringing up very negative energy relating to his own experience when he was in his mother's womb. Smith felt that the plaintiff's baby had a negative agenda.  Earl opined that the baby had a past life with Smith and she asked Smith to partner with the baby.  Smith responded that "his whole system said no to being partners" with the plaintiff's baby. Smith

stated Plaintiff's baby's energy "is hostile" towards him. This incident was terribly troubling to the plaintiff.

17. During the month of May, 2009, Smith was gone most of that month for travel. Soon after he returned, on June 3, 2009, he terminated the plaintiff's employment while she was approximately five months pregnant.

18. Once the plaintiff notified the Defendant of her pregnancy her work environment drastically changed. The work environment became hostile towards the plaintiff. She was specifically told that, according to the religious practice of Intuitive Spirituality, the plaintiff's fetus was creating a negative energy field in the work place. At this point the plaintiff began to personally resist the concepts of Intuitive Spirituality being forced upon her at work.

19. The plaintiff's work performance was satisfactory at all times. It was only after she informed Defendant of her pregnancy that the defendant began questioning her appearance, attitude, and began applying intuitive spirituality to suggest that Plaintiff's fetus was creating negative energy specifically for Smith, prompting her termination on June 3, 2009.

## FIRST CAUSE OF ACTION

## RELIGIOUS DISCRIMINATION

20. Plaintiff incorporates herein and fully sets forth the allegations contained in paragraphs 1-19.

21. From the time when the plaintiff notified the defendant of her pregnancy, she was treated differently and experienced adverse employment action, including a hostile working environment and her ultimate termination

of employment, as a result of the defendant's negative religious response to the plaintiff's pregnancy, specifically her fetus allegedly creating "negative energy" as established by his "Intuitive" religious beliefs.

22.   Defendant, by and through its Chief Executive Officer, John Smith, engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act.  These practices include, but are not limited to, religious discrimination in violation of Title VII of the Civil Rights Act, resulting in her termination of employment and loss of income.

23.   Defendant's actions were done willfully and/or with malice, and/or with reckless indifference to the state and federally protected rights of the plaintiff.

24.   As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered actual compensatory damages, loss of wages, loss of future income and loss of other company sponsored benefits, the total of which will be specifically pleaded when ascertained through discovery.

25.   As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered significant humiliation and emotional pain and suffering.

SECOND CAUSE OF ACTION

PREGNANCY DISCRIMINATION CLAIM

26.   Plaintiff incorporates herein and fully sets forth the allegations contained in paragraphs 1-25.

27. The aforementioned gender-based discrimination claim is in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e(k), 2000e-2(a). These practices include, but are not limited to, the hostile work environment because of Plaintiff's pregnancy, and the Defendant's unlawful termination of the plaintiff due to the fact that she was pregnant.

28. Defendant's actions were done willfully and/or with malice, and/or with reckless indifference to the state and federally protected rights of the plaintiff.

29. As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered actual compensatory damages, loss of wages, loss of future income and loss of other company sponsored benefits, the total of which will be specifically pleaded when ascertained through discovery.

30. As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered significant humiliation and emotional pain and suffering.

### THIRD CAUSE OF ACTION

### PENDANT STATE RELIGIOUS DISCRIMINATION CLAIM

31. Plaintiff incorporates herein and fully sets forth the allegations contained in paragraphs 1-30.

32. From the time when the plaintiff notified the defendant of her pregnancy, she was treated differently and experienced adverse employment action, including a hostile work environment and her termination of employment, as a result of the defendant's negative religious response to the

plaintiff's pregnancy, specifically her fetus allegedly creating "negative energy" as established by his "Intuitive" religious beliefs.

33. Defendant, by and through its Chief Executive Officer, John Smith, engaged in unlawful employment practices in violation of the religious protection rights found I the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 (et seq. Reissue 2004). These practices include, but are not limited to, religious discrimination in violation of Title VII of the Civil Rights Act, resulting in Plaintiff's termination of employment and loss of income.

34. Defendant's actions were done willfully and/or with malice, and/or with reckless indifference to the state and federally protected rights of the plaintiff.

35. As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered actual compensatory damages, loss of wages, loss of future income and loss of other company sponsored benefits, the total of which will be specifically pleaded when ascertained through discovery.

36. As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered significant humiliation and emotional pain and suffering.

## FOURTH CAUSE OF ACTION

### PENDANT STATE GENDER-PREGNANCY DISCRIMINATION CLAIM

37. Plaintiff incorporates herein and fully sets forth the allegations contained in paragraphs 1-36.

38.  The aforementioned gender-pregnancy based discrimination claim is in violation of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 et. seq.  These practices include, but are not limited to, a hostile work environment and defendant's unlawful termination of the plaintiff because of her gender and pregnancy.

39.  Defendant's actions were done willfully and/or with malice, and/or with reckless indifference to the state and federally protected rights of the plaintiff.

40.  As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered actual compensatory damages, loss of wages, loss of future income and loss of other company sponsored benefits, the total of which will be specifically pleaded when ascertained through discovery.

41.  As a direct and proximate result of defendant's discriminatory actions, Plaintiff has suffered significant humiliation and emotional pain and suffering.

WHEREFORE, Plaintiff prays for:

a.  An award of back pay to compensate the plaintiff for loss salary, employee benefits, promotions, and other loss of job opportunities she has suffered;

b.  An Order directing Defendant to place Plaintiff in a position she would be holding had she not been discriminated against, such award including, but not limited to, reinstatement, or payment of front pay in lieu of reinstatement for a reasonable time into the future;

10

c. An award of costs in this suit and reasonable attorneys fees as allowed;

d. An award of prejudgment interest;

e. An Order enjoining the defendant from engaging in unlawful discrimination practices;

f. An Order granting compensatory damages for emotional pain, suffering, and physical injury incurred by the plaintiff as a result of the defendant's discriminatory actions;

g. An award of punitive damages;

h. And for such other future relief as the court deems just and proper under the circumstances.

## JURY DEMAND

The plaintiff hereby demands a trial by jury on all the issues. Plaintiff requests that such trial be held in Lincoln, Nebraska.

JAMMIE D. HARMS, Plaintiff,

By: /s/ *Douglas J. Peterson*
DOUGLAS PETERSON #18146
KEATING, O'GARA, NEDVED & PETER, L.L.O., P.C.
530 S. 13th St., Suite 100
Lincoln, NE 68508
(402) 475-8230

11